# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| MAOHUI LIU; LELAN XIONG; YAGUANG LIU; LILI CAI; CHUNRU SONG; YUNRONG JIANG; MEIHUNA LIU; QIYUAN HUANG; QI WANG; ZIQIANG ZHAO; HAO MAO; YONGPING ZHAO; YUE FU; XI PENG; WEI SONG; GUANQUN CHI; YOUJIA MA; JIANJUN LI; YUAN WANG; NING CAI; CONG XU; FANG ZHAO; WEI NING; LING LI; LI ZHANG; XIA ZHANG; LIN LIANG; SONG DENG; JIAN LIN; MIN LIN; YING ZHANG; JIANQIN CHEN; GUOYE CHEN; and HUAIYANG FU, | CIVIL ACTION NO. 6:19-cv-02041<br><br>CLASS ACTION COMPLAINT<br><br>*Electronically Filed* |

On behalf of themselves and
all others similar situated,

      Plaintiffs,

      v.

OP REALTY PARTNERS, LLC;
OP CONDOMINIUM MANAGEMENT, LLC;
and MAX P. CAWAL,

      Defendants.

_____/

## **COMPLAINT**

NOW COME MAOHUI LIU, LELAN XIONG, YAGUANG LIU, LILI CAI, CHUNRU SONG, YUNRONG JIANG, MEIHUA LIU, QIYUAN HUANG, QI WANG, ZIQIANG ZHAO, HAO MAO, YONGPING ZHAO, YUE FU, XI PENG, WEI SONG, GUANQUN CHI, YOUJIA MA, JIANJUN LI, YUAN WANG, NING CAI, CONG XU, FANG ZHAO, WEI NING, LING LI, LI ZHANG, XIA ZHANG, LIN LIANG, SONG DENG, JIAN LIN, MIN LIN, YING ZHANG, JIANQIN CHEN, GUOYE CHEN, and HUAIYANG FU, on behalf of themselves (collectively, "Plaintiffs") and all others similarly situated (collectively, "Class Members"), by

and through their undersigned counsel, and pursuant to Rule 3 and Rule 23, *Federal Rule of Civil Procedure*, for their Class Action Complaint against OP REALTY PARTNERS, LLC, OP CONDOMINIUM MANAGEMENT and MAX P. CAWAL (collectively, "Defendants"), allege the following:

## I.     INTRODUCTION

1.     This is an action for damages and injunctive relief arising from a fraudulent real estate pyramid scheme perpetrated by Defendants.  Over the course of four years, Defendants made fraudulent promises of guaranteed rent payments to lure foreign investors into purchasing investment properties with grossly inflated sales prices and prohibitively high homeowner association fees.  Defendants defrauded Plaintiffs and failed to make the rent payments.

**THE PARTIES**

**A.     Lead Plaintiffs**

2.     Plaintiffs are individuals and Chinese citizens who generally lack knowledge of customs and practices for the purchase of real estate in the United States, and in particular, the State of Florida, all of whom purchased property in either Oak Plantation Condominiums (hereafter "Oak Planation Condo"), a Condominium according to the Declaration of Condominium recorded in the Public Records of, Osceola County, Florida in O.R. Book 1375, Page 242, or Oak Plantation Resort & Suites Condominium Association (hereafter "Oak Planation Resort"), a Condominium according to The Declaration of Condominium recorded in the Public Records of Osceola County, Florida in O.R. Book 3040, Page 147.

3.      Plaintiff Maohui Liu is an adult individual residing in Room 204-2-103, Meijia HuBin XinCheng Jiang Xia Avenue, JingXia District, Wu Han Hu BZ1, China. Mr. Liu purchased Units 1405 and 1504 of Oak Plantation Condo from Defendant OP Realty.

4.      Plaintiff Wei Ning is an adult individual residing in T4-1-3304 Raycom Skyline, Jiefang South Road, Jiang An District, Wuhan, Hubei, China. Ning purchased Unit 105 of Oak Plantation Condominium from Defendant OP Realty.

5.      Plaintiff Lelan Xiong is an adult individual residing in 44-3-202 Jialu Xiyuan Xihu District Hang Hangzhou, China. Ms. Xiong purchased Unit 508 of Oak Plantation Condominium from Defendant OP Realty.

6.      Plaintiff Yaguang Liu is an adult individual residing in Room 202, Unit 3, Building 4, Central Park No. 278, Central Road, Xuanwu District, Nanjing, Jiang Su, China. Liu purchased Unit 1406 of Oak Plantation Condominium from Defendant OP Realty.

7.      Plaintiff Lili Cai is an adult individual residing in Rm 802, No. 63, Tianhe Huijing South Road, Guangzhou City, Guangdong Province, China. Cai purchased Unit 1414 of Oak Plantation Condominium from Defendant OP Realty.

8.      Plaintiff Chunru Song is an adult individual residing in Room 8, Unit 2, Building 904, No.2, Jingouhe Road, Haidian District, Beijing, China. Song purchased Unit 314 of Oak Plantation Condominium from Defendant OP Realty.

9.      Plaintiff Yunrong Jiang is an adult individual residing in Room 402, Unit 3, No. 4 International Garden, Haiyuan Zhong Road, Wuhua District, Kunming, Yunnan, China. Jiang purchased Unit 104 of Oak Plantation Condominium from Defendant OP Realty.

10.     Plaintiff Meihua Liu is an adult individual residing in Six One School, Longhua New District, Scenzhen City, China. Liu purchased Units 114 and 106 of Oak Plantation Condominium from Defendant OP Realty.

11.     Plaintiff Qiyuan Huang is an adult individual residing in Room 102, Unit 2, No. 32 Building, Kairui Xiyuan Zhangdian District, Zibo City, China. Huang purchased Unit 916 of Oak Plantation Condominium from Defendant OP Realty.

12.     Plaintiff Qi Wang is an adult individual residing in 601, Building 280, HupueShanZhuan, Middle Village, Chanjiang West Road, SnuShan District, HeFei, AnHui, China. Wang purchased Unit 411 of Oak Plantation Condominium from Defendant OP Realty.

13.     Plaintiff Ziqiang Zhao is an adult individual residing in Beijing Wonderful, Auto Service Company No. 3, Huayuan Road, Haidian District, Beijing, China. Zhao purchased Unit 308 of Oak Plantation Condominium from Defendant OP Realty.

14.     Plaintiff Hao Mao is an adult individual residing in Room-2001 Building G17, HaiTang Garden, South Bayi Street, Wucheng District, Jin Hua, 2HZ Jiang, China. Mao purchased Unit 1403 of Oak Planation Condo from Defendant OP Realty.

15.     Plaintiff Yongping Zhao is an adult individual residing in Room B302, MeiLuJinYuan, No.25, Shi Zhou Zhong Road, Nan Shan District, Shen Zien, Guang Dong, China. Zhao purchased Unit 513 of Oak Plantation Condominium from Defendant OP Realty.

16.     Plaintiff Yue Fu is an adult individual residing in 9B – 1103, Nord Holiday garden, Qian Hai Road, Nan Shan District, Shen Zhen, Guang Dong, China. Fu purchased Unit 306 of Oak Plantation Condominium from Defendant OP Realty.

17.     Plaintiff Xi Peng is an adult individual residing in No. 6, Unit 2, Building 4, No. 4 Baishan Road, Xi San Duan, First Ring Road, Cheng Du, Si Chuan, China. Peng purchased Unit 903 of Oak Plantation Condominium from Defendant OP Realty.

18.     Plaintiffs Wei Song and Guanqun Chi are two individuals residing in Room 302 Unit 159 FB Tower 5 Yu Jing, Shui An Garden, Fu Yong Bao'An District, Shenzhen, China. Song and Chi jointly purchased Unit 203 and 615 of Oak Plantation Condominium from Defendant OP Realty.

19.     Plaintiff Youjia Ma is an adult individual residing in R. 1403, 42 Kai Xuan Rd., Nan Hu Ban Dao Hua Yuan, Baiyun District Guangzhon, Guangdong, China. Ma purchased Unit 1511 of Oak Plantation Condominium from Defendant OP Realty.

20.     Plaintiff Jianjun Li is an adult individual residing in Room 502, Unit 2, Building 10, Area 2, Fu Juan Dong Li, Yi Zhuang Town Dz Xing District, China. Li purchased Unit 1104 of Oak Plantation Condominium from Defendant OP Realty.

21.     Plaintiff Yuan Wang is an adult individual residing in Room 1501, Unit 1, Building 3, YuYuan, He Xiang Yuan Xihu District, Hang Zhou, Zhe Jiang, China. Wang purchased Unit 904 of Oak Plantation Condominium from Defendant OP Realty.

22.     Plaintiff Ning Cai is an adult individual residing in Room 201 No. 6, 825, Lane Shang Hai, China. Cai purchased Unit 610 of Oak Plantation Condominium from Defendant OP Realty.

23.     Plaintiff Cong Xu is an adult individual residing in 28-3-401 Zigui Garden, No. 268 Wenerxi Road, Xihu District, Hang Zhou, Zhe Jiang, China. Xu purchased Unit 310 of Oak Plantation Condominium from Defendant OP Realty.

24.     Plaintiff Fang Zhao is an adult individual residing in 2-4-1601, Bei An Hua Ting, Shang Li Road, He Bei District, Tianjin, China. Zhao purchased Unit 703 of Oak Plantation Condominium from Defendant OP Realty.

25.     Plaintiff Wei Ning is an adult individual residing in T4-1-3304 Raycom Skyline, Jiefang South Road, Jiang An District, Wuhan, Hubei, China. Ning purchased Unit 105 of Oak Plantation Condominium from Defendant OP Realty.

26.     Plaintiff Ling Li is an adult individual residing Room D2-502, No12, Jihui Street, Lingnan New World, Baiyun District, Guangzhou, China. Li purchased Unit 1309 of Oak Plantation Condominium from Defendant OP Realty.

27.     Plaintiff Li Zhang is an adult individual residing in 20-6, No. 116 Sheng Di Building, Jiabin Road, Yuzhong District, ChongQing, Si Chuan, China. Zhang purchased Unit 206 of Oak Plantation Condominium from Defendant OP Realty.

28.     Plaintiff Xia Zhang is an adult individual residing in 10-2101, Gediao Zhujing, Huqiu Road, Hedong District, TianJing, China. Zhang purchased Unit 1515 of Oak Plantation Condominium from Defendant OP Realty.

29.     Plaintiff Lin Liang is an adult individual residing in No.3, Tian Le Jing Fengye Road, GuangZhou, China. Liang purchased Unit 215 of Oak Plantation Condominium from Defendant OP Realty.

30.     Plaintiff Song Deng is an adult individual residing in Rm 702. C1, Huajiang Garden, No. 87, Huangpu Avenue, Tianhe District, Guangzhou, China. Deng purchased Unit 1514 of Oak Plantation Condominium from Defendant OP Realty.

31.     Plaintiffs Jian Lin and Min Lin are adult individuals residing in Room 2601, Building, D2, Long Xi Shan E1 Street, Huijing XinCheng, Guang Yuan East, Tian He

District, Guangzhou, GuangDong, China. The Lin's purchased Units 101 and 301 of Oak Plantation Condominium from Defendant OP Realty.

32. Plaintiff Ying Zhang is an adult individual residing in 10-1-402, Fangqing Yuan, Baoshengli, Haidian District, Beijing, China. Zhang purchased Unit 905 of Oak Plantation Condominium from Defendant OP Realty.

33. Plaintiff Jianqin Chen is an adult individual residing in Room 2503, Building 43, Yuyun Shaian, Foshan XinCheng Shunde District, Foshan, Guangdong Province, China. Chen purchased Unit 814 of Oak Plantation Condominium from Defendant OP Realty.

34. Plaintiff Guoye Chen is an adult individual residing in No. 15, Xiatang Road, Lishui Town, Nanhai District, Foshan City, Guangdong Province, China. Chen purchased Unit 1408 of Oak Plantation Condominium from Defendant OP Realty.

35. Plaintiff Huaiyang Fu is an adult individual residing in Room 1503, Building 3, Yifengdao, Xinhua Street, Xincheng District, Hohhot City, Inner Mongolia, China. Fu purchased Unit 816 of Oak Plantation Condominium from Defendant OP Realty.

**B.    Defendants**

36. Defendant OP Realty Partners, LLC (hereinafter "OP Realty") is a Florida limited liability company with its principal place of business at 4090 Enchanted Oaks Cir., Kissimmee, Florida.

37. Defendant OP Condominium Management, LLC (hereinafter "OP Condominium Management") is a Florida limited liability company with its principal place of business in Kissimmee, Florida.

38. Max P. Cawal ("Cawal") is an individual doing business and residing in Osceola County, Florida.

39.     Cawal is a real estate agent licensed in the state of Florida under Florida License Number SL519558.

40.     Cawal is a manager member of both OP Realty and OP Condominium Management and an agent and/or employee of OP Realty and OP Condominium Management who acted in the usual and ordinary course of his employment and agency with them for the transactions alleged in this complaint below.

## II.     JURISDICTION AND VENUE

41.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Plaintiffs and Class Members are citizens of China and Defendants OP Realty Partners, LLC., OP Condominium Management, LLC, and Max P. Cawal, are Florida citizens and residents, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Finally, this Court has jurisdiction over the individual state law claims through diversity of citizenship under 28 U.S.C. § 1332 and/or supplemental jurisdiction under 28 U.S.C. § 1367.  The parties are of diverse citizenship—plaintiffs are citizens of China and the defendants are citizens of Florida—and the amount in controversy exceeds $75,000.

42.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Plaintiffs' and Class Members' claims occurred in this District. Defendants conduct substantial business in this District, have marketed, advertised, and sold condominium units in this District, have developed their fraudulent scheme in this District, have implemented their fraudulent scheme in this District and throughout their business operations as alleged herein, have overseen and enforced their fraudulent scheme in and from this District, have benefitted from this fraudulent scheme in this District, and have caused harm to Plaintiffs and Class Members in this District.

43.     Any purported forum selection clauses in the purported contracts at issue in this case are invalid and unenforceable.

### III.     FACTUAL BASIS OF PLAINTIFFS' CLAIMS

44.     Representative Plaintiffs and other Class Members are the victims of Defendants' highly organized and fraudulent pyramid scheme to sell condominium units at Oak Plantation Resort at Kissimmee, Florida to unsophisticated Chinese individuals who do not understand English and are unfamiliar with the real estate market in Florida.

45.     Upon information and belief, starting from 2016, Defendant OP Realty Partners, LLC and OP Condominium Management, LLC conspired with three Chinese realty companies – Beijing Qiaoye International Property Investment Consulting Co., Ltd (hereinafter "Qiaoye"), Huamei Yousheng (Beijing) International Investment Consulting Co., Ltd. (hereinafter "Huamei"), and Kingstyle International (hereinafter "Kingstyle"), enticing Plaintiffs to purchase the condominium units as rental property based on fraudulent misrepresentations that Defendants would lease back the units in a manner resulting in a guaranteed high rate of return for Plaintiffs.

46.     Upon information and belief, under the instructions OP Realty Partners, LLC, the Chinese realty companies host promotion events for Oak Plantation Condo and Oak Plantation Resort in China.

47.     The Chinese realty companies advertised Oak Plantation Condo and Oak Plantation Resort as lucrative investment properties.

48.     At the promotion events, the Chinese realty companies engaged in high-pressure sales tactics. They persuaded Plaintiffs to pay a deposit of $1,500 immediately to lock in "the good deal."

49.     The Chinese realty companies informed Plaintiffs that the average one bedroom unit price was as low as $95,900.

50.     They assured Plaintiffs that they got a great deal because Plaintiffs would further receive a $5,000 discount as part of a promotional sale, and that they would get guaranteed returns if using the units as investment property.

51.     OP Realty intentionally concealed the fact that it bought the units shortly before—in some cases, the same day it sold the units to Plaintiffs. It doubled the sales price when flipping the units to Plaintiffs without making any investment in or improvements the property.

52.     The promotional $5,000 "discount" was illusory, and an intentional misrepresentation for the purpose of inducing the Chinese purchasers.

53.     Plaintiffs were also told that once they purchased the property, OP Condo Management would sign a separate lease agreement with Plaintiffs. Plaintiffs would receive guaranteed annual rental returns for at least six percent (6%) of the sales price.

54.     Plaintiffs relied on these misrepresentations in agreeing to purchase the units at high prices that they would not otherwise have agreed to pay.

55.     Defendants ceased making lease payments in late 2017.

56.     After Defendants defaulted in payments, they continued marketing and selling condos to Chinese investors, though they clearly knew that they could not pay rents as they promised.

57.     Defendants' scheme violates applicable common law and the duty of good faith and fair dealing implicit in all contracts.

58.     Representative Plaintiffs and other Class Members have suffered injuries, harm and damages due to Defendants' unlawful and wrongful conduct.

59.     Representative Plaintiffs and hundreds of other Class Members were enticed to pay millions of dollars to purchase the condo units as a result of Defendants' fraudulent conduct.

60.     In this action, Representative Plaintiffs seek to remedy the injuries, harm and damages for Representative Plaintiffs and Class Members who have purchased one or more condo units from Defendants since 2016.

61.     Defendant OP Realty, through Qiaoye, Huamei, and Kingstyle, three Chinese realty companies, fraudulently induced Plaintiffs and more than 143 other similarly situated Chinese investors to purchase approximately 155 units of the Oak Plantation Condominium located in Orlando, FL since 2016 (some Plaintiffs bought two or more units). The true and correct copies of the sales agreement are attached hereto as **Exhibit A**[1].

62.     As part of the sale, Defendant OP Realty promised Plaintiffs that if they purchased the units, Defendant OP Realty and Defendant OP Condominium Management, a related entity of OP Realty, would simultaneously enter into lease agreements under which Plaintiffs would be paid guaranteed monthly rent payments. The true and correct copies of the lease agreement are attached hereto as **Exhibit B**[2].

---

[1] For ease of reference, Plaintiffs attached a true and correct copy of Mr. Wei Ning's purchase agreement as **Exhibit A**. Other than where noted, all of the provisions to which Plaintiffs refer herein are identical in all the purchase agreements.

[2] For ease of reference, Plaintiffs attached a true and correct copy of Mr. Wei Ning's lease agreement as **Exhibit B**. Other than where noted, all of the provisions to which Plaintiffs refer herein are identical in all the lease agreements.

63.     The lease agreement also has Special Stipulations between Defendant OP Realty and Plaintiffs wherein OP Realty would pay Plaintiffs a guaranteed six percent (6%) net rent payment of the original purchase prices per year.

64.     The Special Stipulations further provide that Defendant OP Realty will take over the responsibilities for all homeowners association fees ("HOA fees"), and applicable real estate taxes.

65.     However, Defendants never disclosed the actual HOA fees to Plaintiffs at the time of the transactions.

66.     As a licensed Florida real estate sales associate, Defendant Cawal at all material times had the duties required by Florida common law not to misrepresent or to omit material facts respecting the Plaintiffs' purchase and by the Florida Brokerage Relationship Disclosure Act, § 475.2701, Fla. Stat., et seq. (the "Disclosure Act"), in particular, § 475.278(2), (3) and (4), Fla. Stat., to deal "honestly and fairly" and to disclose to Plaintiffs "all known facts that materially affect the value of residential real property and are not readily observable to the buyer."

67.     As a licensed Florida real estate corporation, OP REALTY has the duties required by Florida common law not to misrepresent or to omit material facts and by the Disclosure Act, in particular, § 475.278(2), (3) and (4), Fla. Stat., to deal "honestly and fairly" and to disclose "all known facts that materially affect the value of residential real property and are not readily observable to the buyer." OP REALTY violated Florida common law not to misrepresent or to omit material facts respecting the Plaintiffs' purchase and the Act as to the Plaintiffs by failing to deal "honestly and fairly" and to disclose to Plaintiffs "all known facts

that materially affect the value of residential real property and are not readily observable to the buyer."

68.     Starting from August 2017, Defendants informed Plaintiffs that they were unable to make rent and tax payments.

69.     In 2018, Defendants continued to enter into purchase agreements and lease agreements with new Chinese investors. Defendants misrepresented to the investors that Defendants would pay guaranteed rent, tax, and condo association assessments despite having already failed to make payments for several months to the existing owners.

## IV.     CLASS ACTION ALLEGATIONS

70.     Plaintiffs are similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and 23(c)(4). They seek to represent a class of:

> All persons who purchased condo units of Oak Plantation Condominium purchased from Defendant OP Realty through Chinese realtors Qiaoye, Huamei, and Kingstyle and entered into Lease Agreements with Defendant OP Realty and Defendant OP Condominium Management, LLC since 2016.

Excluded from coverage of the above class definition are: Defendants, each of the companies' officers, directors, and employees; any entity in which one or more of the companies has a controlling interest or which has a controlling interest in one or more of the companies, and that entity's officers, directors, and employees; the judge assigned to this case and his or her immediate family; all expert witnesses in this case; and all persons who make a timely election to be excluded from the class.

71.     Plaintiffs reserve their right to allege additional subclasses as warranted.

A.       **Plaintiffs meet the prerequisites of Rule 23(a)**

72.     <u>Numerosity</u>. The putative class is so numerous that joinder of all members is impracticable. Upon information and belief, OP Realty has sold approximately 150 units of the Oak Plantation Condominium to over 140 similarly situated Chinese investors since 2016.

73.     <u>Commonality</u>. The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to Defendants' fraudulent scheme described in this Complaint, including material omissions, misrepresentations, and concealment about the fair market value of the property, and Defendants' uniform and standardized material omissions, misrepresentations, and concealment about the nature of the lease agreements. All units in the building were marketed in the same manner and to the same class of individuals.  The breach of Defendants' obligations occurred simultaneously and resulted from the same actions and/or omissions.

74.     <u>Typicality</u>. Plaintiffs have the same interests as all Class Members they seek to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other Class Members. Plaintiffs and all Class Members were all victims of the same fraudulent scheme that persuaded them to purchase condominium units at Oak Plantation Condominium from OP Realty. All of the claims of Plaintiffs and Class Members arise out of Defendants' omissions, misrepresentations, and concealment of material facts and other wrongful conduct regarding the condominium units they sold to and leased back from Class Members, and Defendants' misrepresentations through their agents that the plaintiffs would be paid monthly rent, taxes and Oak Plantation Condominium Association monthly assessments and failed to disclose to the Plaintiffs that such would not likely occur.

75.     <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the interests of the putative class and have retained counsel that is experienced and competent in the fields of

corporate law and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with those of the class. Plaintiffs will fairly and adequately represent and protect the interest of Class Members: Plaintiffs' interests align with those of Class Members, and Plaintiffs have no fundamental conflicts with the Class. Plaintiffs have retained counsel competent and experienced in class action litigation, including consumer fraud, who will fairly and adequately represent the Class.

### B.    Plaintiffs meet the prerequisites of Rule 23(b)(2)

76.    An injunction should be issued enjoining Defendants from the continuation of their fraudulent sales scheme. Further, Defendants should be enjoined from continuing to violate the laws of the state and U.S. territories described herein. Additionally, that an injunction be issued declaring that Plaintiffs' and Class Members have a right to rescind their contracts and that Defendants must disgorge profits received from Plaintiffs and Class Members.

### C.    Plaintiffs meet the prerequisites of Rule 23(b)(3)

77.    Predominance and Superiority. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Defendants have acted under a uniform fraudulent scheme with respect to the Class.

78.    The fraudulent conduct and ongoing harm to the Class described above counsel in favor of swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

79.    Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, Class

15

Members will continue to have wrongfully obtained sales agreement and lease and related obligations foisted upon them, and further be restricted from controlling their property while incurring monetary damages, and Defendants' misconduct will continue without remedy, while their ill-gotten profits will grow at the expense of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

80.     Common questions of law and fact predominate in this action because Defendants OP Realty and OP Condominium Management have acted on grounds generally applicable to all members. Among the questions of law and fact common to the Plaintiffs and class members are:

a) Whether Defendants employed a scheme to defraud Class Members (i.e. prospective owners and current owners) in the advertising and sale of condominium units located at Oak Planation Condominium
b) Whether Defendants omitted material information in the advertising and sale of condominium units to Class Members;
c) Whether Defendants owed a duty to Class Members to disclose property information;
d) Whether Defendants fraudulently induced Class Members to enter into a lease agreement as precondition of the sales agreement
e) Whether Defendants' misrepresentations, omissions, and concealment were material;
f) Whether Defendants actions were deliberate;
g) Whether any misrepresentations, omissions, and concealment by Defendants caused the Class Members' injuries;
h) Whether Defendants breached their contracts with Class Members;
i) Whether Defendants violated Florida Deceptive And Unfair Trade Practices Act;
j) Whether Defendants violated Florida Broker Relationship Disclosure Act;
k) Whether Defendants violated the Florida common laws; and
l) Whether Defendants breached their duty of good faith and fair dealing with Class Members.

81.     There will be no undue difficulty in the management of this litigation as a class action.

**D.      The proposed class is ascertainable.**

82.      The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of condominiums located at 4090 Enchanted Oaks Circle, Kissimmee, Florida and class membership can be determined using contracts, deeds, receipts, ownership documentation, communications, and records in Defendants' possession.

## V.      CAUSES OF ACTION

<u>COUNT I</u>
<u>RESCISSION (OP REALTY)</u>

83.      Plaintiffs hereby incorporate by reference Paragraphs 1 through 82 of the Complaint as though the same were more fully set forth herein.

84.      The Purchase Agreements were valid and legally enforceable contract sbetween Defendant and Plaintiffs.

85.      Plaintiffs hereby rescinds the Purchase Agreement.

86.      Plaintiffs hereby offers to restore the deed and title to the Property to Defendant OP Realty.

87.      Rescission is warranted due to fraud, or illegality in that:

a) Defendant OP Realty, through its agents and representatives, misrepresented that Plaintiffs would make a guaranteed annum six percent of the purchase price from purchasing the condos;
b) The Plaintiffs would be paid the Agreed-To Percentage for the Agreed-To Number of Months;
c) The misrepresentations made by its agents, Qiaoye, Huamei, and Kingstyle;
d) Defendant OP Realty concealed about the fair market value of the property;
e) The real estate taxes and Oak Plantation Condominium Association monthly assessments on their condominium unit would be paid; and
 i. The sale was procured through an illegal scheme to defraud.

88.     When Defendant OP Realty made the misrepresentations and omissions, it intended such misrepresentations and omissions to induce Plaintiffs to act on them.

89.     Plaintiffs justifiably relied on OP Realty's misrepresentations when they entered into and closed on the Purchase Agreement.

90.     Plaintiffs would not have entered into the Purchase Agreement or closed on same if OP Realty had told the truth.

91.     Plaintiffs have been damaged and continue to sustain damages as a proximate result of the fraud, or illegality.

92.     Plaintiffs informed OP Realty that the Purchase Agreement is rescinded.

93.     Plaintiffs are willing to return to the status quo by giving back the condominium units.

94.     Plaintiffs have no adequate remedy at law, in part, because the maintenance costs associated with the property are ongoing, continuing, and unreasonable to impose upon Plaintiffs who did not voluntarily and knowingly accept responsibility for such obligations.

95.     Plaintiffs have been damaged and continue to sustain damages as a proximate result of the fraud perpetrated by Defendants, and such damages include, but are not limited to the following:

a) Rent from the date of default until the date of judgment;
b) Property taxes on the Property from the date of default until the date of judgment;
c) Insurance of the Properties from the date of default until the date of judgment;
d) Expenses related to the closings which the Plaintiffs incurred;
e) Late fees, interest, and other consequential and incidental expenses related to any and all of the aforementioned damages;
f) Prejudgment interest on amounts paid by the Plaintiffs for any and all of the aforementioned damages.

The damages mentioned in the preceding paragraphs were reasonably foreseeable by Defendants when they made the misrepresentations.

WHEREFORE, Plaintiffs demand judgment against OP Realty, for damages, special damages identified in paragraph 94, interest, costs, attorneys' fees, and such additional and further relief as this Court deems just and proper.

## COUNT II
## FRAUD IN THE INDUCEMENT (AGAINST ALL DEFENDANTS)

96.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 82 of the Complaint as though the same were more fully set forth herein.

97.     The Purchase Agreement was a valid and legally enforceable contract between Defendants and Plaintiffs.

98.     Defendants made false statements and omissions to Plaintiffs regarding material facts in that:

a)  Defendant OP Realty, through its agents and representatives, misrepresented that Plaintiffs would make a guaranteed annum six percent of the purchase price from purchasing the condos
b)  The Plaintiffs would be paid the Agreed-To Percentage for the Agreed-To Number of Months
c)  The misrepresentations made by its agents, Qiaoye, Huamei, and Kingstyle;
d)  Defendant OP Realty concealed about the fair market value of the property;
e)  The real estate taxes and Oak Plantation Condominium Association monthly assessments on their condominium unit would be paid
f)  The sale was procured through an illegal scheme to defraud

99.     Defendants knew, or should have known, that they were and are misrepresenting, omitting, and concealing material facts. The misrepresentations, omissions, and concealment described herein were material in nature, and were made to induce Plaintiffs and Class Members to enter into the purchase agreement.

100.    Plaintiffs and Class Members reasonably and justifiably relied upon Defendants' misrepresentations, omissions, and concealment of material facts in deciding to purchase the condos and lease them back to Defendants.

101.    Plaintiffs would not have entered into the purchase agreement or lease agreement if Defendants had told the truth and provided a timely and full disclosure.

102.    Plaintiffs have been damaged and continue to sustain damages as a proximate result of the fraud perpetrated by Defendants, and such damages include, but are not limited to the following:

a) Rent from the date of default until the date of judgment;
b) Property taxes on the Property from the date of default until the date of judgment;
c) Insurance of the Properties from the date of default until the date of judgment;
d) Expenses related to the closings which the Plaintiffs incurred;
e) Late fees, interest, and other consequential and incidental expenses related to any and all of the aforementioned damages; and
f) Prejudgment interest on amounts paid by the Plaintiffs for any and all of the aforementioned damages.

103.    The damages mentioned in the preceding paragraphs were reasonably foreseeable by Defendants when they made the misrepresentations.

WHEREFORE, Plaintiffs demands judgment against Defendants, for damages, special damages identified in Paragraph 102, interest, costs, attorneys' fees, and such additional and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
## (AGAINST ALL DEFENDANTS)

104.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 82 of the Complaint as though the same were more fully set forth herein.

105.    Since 2016, Defendants OP Condominium Management and OP Realty entered into written lease agreements with Plaintiffs and all other similar situated Chinese investors for the property located at 4090 Enchanted Oak Circle, Kissimmee, Florida 34741.

106.    Defendants have breached and continue to materially breach the lease by failing to pay the rent, monthly condominium assessments, real estate taxes, hazard insurance premiums and accrued interests to Plaintiffs and all other similarly situated Chinese investors since August 2017.

107.    Additionally, Defendant breach the Lease Agreement by failing to fully furnish the unit as agreed.

108.    In early 2018, Plaintiffs made demand for the payment of amounts due upon Defendants.

109.    On April 27, 2018, OP Condominium Management, LLC, through its counsel Brian M. Mark, sent a letter to Defendants, explaining that it will defer the rent payment for only "three to four months" and will pay interest at the rate of five percent (5%) per annum on deferred amounts. (See **Exhibit C**.)

110.    However, Defendants have failed and continue to fail to cure the specified defaults or pay any interest as promised.

111.    Plaintiffs were damaged and are now entitled to a judgment in the total amount of unpaid past-due rent, association assessments taxes and five percent (5%) interest owed to Plaintiff.

112.    Plaintiffs were also entitled to get their unit furnished.

113.    Alternatively, Plaintiffs are entitled to end their leases based on acceleration clause in the lease agreements which provides that upon the Defendants' default Plaintiffs may terminate the lease. (**Exhibit B**, at p.2)

114.    Pursuant to the lease agreement, Plaintiffs are also entitled to recover their reasonable attorneys' fees and costs associated with attempting to enforce the lease agreements. (**Exhibit B**, at p.2)

WHEREFORE, Plaintiffs demands judgment against Defendants, for damages, special damages identified in Paragraph 102, interest, costs, attorneys' fees, and such additional and further relief as this Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT (IN THE ALTERNATIVE)
## (AGAINST ALL DEFENDANTS)

115.    Plaintiffs hereby incorporate by reference Paragraphs 1 through 82 of the Complaint as though the same were more fully set forth herein.

116.    By leasing the condominium units as described above, Plaintiffs conferred a benefit on Defendants.

117.    Defendants had knowledge of the benefit and accepted the conferred benefit by subleasing the subject properties.

118.    Under the circumstances, it would be inequitable for Defendants to retain the benefit without paying any value thereof to Plaintiffs.

WHEREFORE, Plaintiffs demands judgment against Defendants, for damages, special damages identified in paragraph 102, interest, costs, attorneys' fees, and such additional and further relief as this Court deems just and proper.

22

**COUNT V**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES**
**ACT - FLORIDA STATUTES §§501.201 ET SEQ.FL.**
**(AGAINST ALL DEFENDANTS)**

119.    Plaintiffs, individually and on behalf of all others similarly situated, adopt and incorporate by reference each of the allegations contained in Paragraphs 1 through 82 as though fully set forth herein.

120.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201 et seq. (the "Act"). The stated purpose of the Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

121.    Plaintiffs and all Class Members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Florida Statutes §501.203(7) and (8) respectively. Oak Plantation Condo and Oak Plantation Resort are "property" within the meaning of the Act.

122.    Fla. Stat. §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

123.    Defendants violated the Act by engaging in the unfair and deceptive actions and/or omissions as described herein by engaging in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Specifically, Defendants misrepresented and omitted material facts respecting the Plaintiffs' purchase and the Act as to the Plaintiffs by failing to deal "honestly and fairly" and to disclose to them or to their agents in China all known facts that materially affect the value of residential real

23

property and are not readily observable to the buyer respecting the sale of condominium units at

Oak Plantation. In particular, Defendants misrepresented to the Plaintiffs that

    a. The Plaintiffs would be paid the Agreed-To Percentage for the Agreed-To Number of Months;

    b. The real estate taxes and Oak Plantation Condominium Association monthly assessments on their condominium unit would be paid; and

    c. The Monthly Payment Amount would be paid and failed to disclose to the Plaintiffs or their agents that such would not likely occur.

      124. Defendants violated Florida Statutes, §501.201, et. seq., by knowingly and

falsely representing that Oak Plantation Condo and Oak Plantation Resort are great investment

properties, when Defendants knew they could not guarantee the rent payments. The fraudulent

Lease Agreements were, in effect, a device to induce Plaintiffs to purchase the condos.

      125. Said acts and practices on the part of Defendants were and are illegal and

unlawful pursuant to Florida Statute §501.204.

      126. As a direct and proximate result of Defendants' violations of Florida

Statutes, §501.201, et. seq., Plaintiffs have suffered damages.

      WHEREFORE, Plaintiffs demands judgment against Defendants, for damages, special

damages identified in paragraph 102, interest, costs, attorneys' fees, and such additional and

further relief as this Court deems just and proper.

## COUNT VI

### BREACH OF FIDUCIARY DUTY OF GOOD FAITH AND
### FAIR DEALING COUNT (AGAINST DEFENDANT CAWAL)

      127. Plaintiffs hereby incorporate by reference Paragraphs 1 through 82 of the

Complaint as though the same were more fully set forth herein.

      128. Defendant Cawal violated Florida common law not to misrepresent or to

omit material facts respecting the Plaintiffs' purchase by failing to deal honestly and fairly and to

disclose to them all known facts that materially affect the value of residential real property and

are not readily observable to the buyer respecting the sale of condominium units at Oak Plantation. In particular, Defendant Cawal misrepresented to the Plaintiffs that:

    a. The Plaintiffs would be paid the Agreed-To Percentage for the Agreed-To Number of Months;

    b. The real estate taxes and Oak Plantation Condominium Association monthly assessments on their condominium unit would be paid; and

    c. The Monthly Payment Amount would be paid and failed to disclose to the Plaintiffs or their agents that such would not likely occur.

    129. As a direct and proximate result of Defendants' violations of Florida Statutes, §501.201, et. seq., Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demands judgment against Defendant, for damages, special damages identified in paragraph 102, interest, costs, attorneys' fees, and such additional and further relief as this Court deems just and proper.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated employees, respectfully request that this Court grant the following relief:

This action to be certified pursuant to Fed. R. Civ. P. 23(a) and 23(b) as class action on behalf of the proposed Class and subclasses, as warranted; that the named Plaintiffs be appointed as Class Representatives, and that counsel below be designated Class Counsel;

    1. That an injunction be issued declaring that Plaintiffs and Class Members have a right to rescind their contracts and that Defendant must disgorge profits received from Plaintiffs and Class Members.

    2. Judgment to be entered in favor of Plaintiffs and Class Members against all Defendants on all causes of action and damages suffered;

3.      Plaintiffs and Class Members be awarded the full, fair, and complete recovery for all causes of action and damages suffered;

4.      Plaintiffs and Class Members be awarded unpaid rent, property taxes, monthly assessment fees for the entire duration of the lease term;

5.      Plaintiffs and Class Members be awarded punitive damages;

6.      Plaintiffs and Class Members be awarded attorney's fees, and costs;

7.      Plaintiffs and Class Members be awarded all appropriate prejudgment and post-judgment interest, as authorized by law; and

8.      Such other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues so triable.

**RESPECTFULLY SUBMITTED** this 23rd day of October, 2019

*/s/ Justin M. Luna*
Justin M. Luna, Esq.
Florida Bar No. 0037131
Latham, Luna, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
jluna@lathamluna.com
(407) 481-5804
*Local Counsel for Plaintiffs and Putative Class*
-and-
*/s/ Bruce Fox*
Bruce C. Fox, Esq. (Pa Bar 42576)
Bruce.Fox@Obermayer.com
Qiwei Chen, Esq. (Pa Bar 322789)
Qiwei.Chen@obermayer.com
Obermayer Rebmann Maxwell & Hippel LLP
500 Grant Street, Ste. 5240
Pittsburgh, PA 15219
(412) 566-1500
*(Pending Admissions Pro Hac Vice)*

# Exhibit A

## PURCHASE AGREEMENT
## OAK PLANTATION CONDOMINIUM

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.

This PURCHASE AGREEMENT (this "Agreement"), made and entered into this 2 7th day of June, 2016 by and between OP REALTY PARTNERS, LLC., a Florida limited liability company ("Seller"), whose address is 4100 Enchanted Oaks Circle, Kissimmee, Florida 34741, and buyer(s) named below ("Buyer"):

Buyer: _Ning Wei_

☑ Married ☐ Single ☑ Male ☐ Female

☐ Married ☐ Single ☐ Male ☐ Female

Buyer's address: T4-1-3304 Raycom Skyline, Jiefang South Road, Jiang An District, Wuhan, Hubei, China

E-mail address: future-fly@hotmail.com
Home Telephone Number: 86-15889480831 or 86-13986106556
Work Telephone Number: _____
Cellular Telephone Number: _____

1.  Purchase and Sale. Buyer agrees to buy, and Seller agrees to sell (on the terms and conditions contained in this Agreement), Unit ___105___, (the "Unit") in OAK PLANTATION CONDOMINIUM, located in Kissimmee, Osceola County, Florida (the "Condominium"). The Unit and the Condominium are described in greater detail in the proposed Declaration of Condominium (the "Declaration") included in the Prospectus and attached exhibits (the "Condominium Documents"). By signing the Receipt for Condominium Documents, a copy of which is attached hereto and made a part hereof as Exhibit "1", Buyer acknowledges receipt of the Condominium Documents and all documents required by Section 718.503, Florida Statutes, to be furnished by a developer to a buyer, on or before the date of this Agreement. The foregoing statement shall not be in lieu of the execution of a Receipt for Condominium Documents.

The Purchase Price for the Unit: $ 95,900.00 .

Unit Site Premium: $ 0 .

Total Purchase Price: $ 95,900.00 .

2.  Payment of the Purchase Price. Buyer agrees to make the following payments against the Purchase Price:

{Oak Plantation Condo;4}

Buyer NW   Seller
INITIALS

| **Payment** | **Due Date** | **Amount** |
|---|---|---|
| Application of Reservation Deposit (if applicable) | Upon execution of Agreement | $ 17,180.00 |
| Balance of Deposit | Upon execution of Agreement | $ 0 |
| Balance | At Closing | $ 76,720.00 |

Deposits must be made in United States funds and all checks must be payable on a bank located in the continental United States. The balance due at closing must be paid by wire transfer of good funds. If Buyer fails to pay any deposit on time and Seller agrees to accept it on a later date (which Seller is not obligated to do), Buyer will pay a late funding charge equal to interest on such deposit at the then applicable highest lawful rate from the date due until the date received and cleared by Seller. Buyer also agrees to pay all costs and other sums required to be paid by Buyer in this Agreement. These charges are explained in detail in Section 11 below.

GENERAL INFORMATION:

BUYER HEREBY ACKNOWLEDGES AND AGREES THAT THE UNIT HAS BEEN PREVIOUSLY OCCUPIED

Listing Broker: _____

Co-Broker:_____(See Section 18 below; if this space is left blank, it shall mean that Seller will not pay any co-broker)

3.     Method of Payment. Buyer understands and agrees that Buyer will be obligated to pay "all cash" at closing. This Agreement and Buyer's obligations under this Agreement to purchase the Unit will not depend on whether the Buyer qualifies for or obtains a mortgage from any lender. Buyer will be solely responsible for making Buyer's own financial arrangements. Seller agrees, however, to cooperate with any lender Buyer chooses and to coordinate closing of the loan with such lender, if, but only if, such lender meets the Seller's closing schedule and pays Seller the proceeds of its mortgage at closing. In the event that lender does not pay Seller these proceeds at closing in immediately cleared funds, and if Seller allows same (which it is not obligated to do), Buyer will not be allowed to take possession of the Unit until Seller actually receives the funds and they have cleared. Notwithstanding any cooperation provided by Seller, nothing herein shall be deemed to qualify or otherwise condition Buyer's obligation to close "all cash" on the purchase of the Unit.

Although Seller is not obligated to do so, if Seller agrees to delay closing until Buyer's lender is ready for funding. Seller's estimate will be adjusted prior to closing based on actual funding and clearance dates. The foregoing Section will continue to be effective after closing.

4.     Deposits. Except where expressly provided herein to the contrary or otherwise required by law, all interest earned on Buyer's deposits shall accrue solely to the benefit of Seller, and shall not be credited against the purchase price of the Unit. No interest will be assumed to be earned, unless in fact said sums are invested in an interest bearing account and do in fact earn interest.

{Oak Plantation Condo;4}

Buyer___NW___Seller___
INITIALS

5. **Seller's Financing.** Seller may borrow money from lenders for the acquisition, construction, renovation and/or conversion of the Condominium. Buyer agrees that any lender advancing funds for Seller's use in connection with the Condominium will have a prior mortgage on the Unit and the Condominium until closing. At that time, Seller shall cause the then applicable mortgages to be released and may use Buyer's closing proceeds for such purpose. Neither this Agreement, nor Buyer's payment of deposits, will give Buyer any lien or claim against the Unit, the Condominium or the real property upon which the Condominium is being developed. Without limiting the generality of the foregoing, Buyer's rights under this Agreement will be subordinate to all mortgages (and all modifications made to those mortgages) affecting the Unit or the Condominium (or the real property upon which the Condominium is being developed) even if those mortgages (or modifications) are made or recorded after the date of this Agreement.

6. **Certain Items and Materials.** Buyer understands and agrees that the only appliances, furnishings, finishings or items of personal property included with the Unit are those presently installed, all of which are not new.

Buyer further understands and agrees that items which may be seen in models (if any) or in illustrations, are not included with the sale of the Unit (unless presently in the Unit and/or identified as included in an addendum or Rider to this Purchase Agreement signed by Seller). Certain items, if included or to be included with the Unit or displayed in models, such as tile, cabinets, wood, stain, grout, wall and ceiling textures, granite, marble, stone, mica and carpeting, are subject to size and color variations, grain and quality variations, and may vary in accordance with price, availability and changes by manufacturer from those shown in the models or in illustrations or included in Seller's Plans and Specifications or in the published list of standard items (if any). If circumstances arise which, in Seller's opinion, warrant changes of suppliers, manufacturers, brand names or items, or if Seller elects to omit certain items, Seller may modify the list of standard features or make substitutions for equipment, material, appliances, etc., with items which in Seller's opinion are of equal or better quality (regardless of cost). Buyer also understands and acknowledges that Seller has the right to substitute or change materials and/or stain colors utilized in wood decor (if any). Buyer recognizes that certain colors as shown in displays or in the models, including, but not limited to, cabinetry, carpeting and wood stain, will weather and fade and may not be duplicated precisely.

The agreements and waivers of Buyer contained in this section will continue to be effective after closing.

7. **Existing Improvements and Other Matters.** Buyer understands and agrees that the Condominium has been in existence and that the Condominium is not new construction. Because the Unit and the Condominium are substantially complete as of the date Buyer signs this Purchase Agreement, Buyer acknowledges and agrees that, subject to the provisions of Section 6 above, Buyer has inspected the Unit and the Condominium and has had the opportunity to examine such plans and specifications as Seller has obtained (including all changes thereto to date) for the Unit and Condominium, all of which are located in Seller's offices and available for inspection during regular business hours or by appointment and, by signing this Purchase Agreement, Buyer agrees to accept the Unit and the Condominium in their "AS IS, WHERE-IS" condition, subject to the provisions of Section 7 above and Section 27 below. This means that Buyer has no claim against Seller for any matters Buyer discovered (or should have discovered) when Buyer inspected (or had the opportunity to inspect) the Unit and Condominium (and the

{Oak Plantation.Condo;4}

Buyer ___ *NW* ___ Seller ___
INITIALS

plans, specifications and changes therefor) and/or for any of the matters disclosed in the reports attached to the Prospectus. Without limiting the generality of the foregoing, Buyer acknowledges that, subject to the provisions of Section 8 below, Seller has requested Buyer to inspect the condition of the Unit, generally, and at that time also to make Buyer's own specific determinations as to the area and dimensions of the Unit and its Limited Common Elements, if any. Buyer shall have the right to inspect the condition of the Unit within fifteen (15) days following the date Buyer signs this Purchase Agreement. Buyer will be deemed to have accepted the Unit and its Limited Common Elements without reservations or claims as to their general condition, area, dimensions or otherwise.

Buyer hereby acknowledges and agrees that sound and/or odor transmission in a multi-story building such as the Condominium is very difficult to control, and that noises and/or odors from adjoining or nearby Units and or mechanical equipment can often be detected in other Units. Without limiting the generality of Section 27, Seller does not make any representation or warranty as to the level of sound and/or odor transmission between and among Units and the other portions of the Condominium Property, and Buyer hereby waives and expressly releases any such warranty and claim for loss or damages resulting from sound and/or odor transmission.

The provisions of this Section 7 will survive (continue to be effective after) closing. Nothing in this Section 7 shall affect Buyer's rights, if any, under Section 718.618, Florida Statutes.

8.      Inspection Prior to Closing. Buyer will be given an opportunity prior to closing, on the date and at the time scheduled by Seller, to inspect the Unit with Seller's representative. At that time, Buyer will sign an inspection statement listing any defects which Buyer discovers. If any item listed is actually defective in workmanship or materials in Seller's opinion (keeping in mind the construction standards applicable in Osceola County, Florida for similar property), Seller will be either offer a cash credit in lieu of correcting the defects or will correct those defects at its cost within a reasonable period of time after closing, but Seller's obligation to correct will not be grounds for deferring the closing, nor for imposing any condition on closing. No escrows or holdbacks of closing funds will be permitted. If Buyer fails to take advantage of the right to a pre-closing inspection of options and upgrades on the date and time scheduled, Seller will not be obligated to reschedule an inspection of same prior to closing and Buyer shall be deemed to have accepted all improvements in their AS-IS condition.

Buyer acknowledges that all matters pertaining to the Unit prior to closing will be handled by Seller and Seller's representatives. Buyer agrees not to interfere with or interrupt any workers at the site of the Unit. No personal inspections (other than during the initial 15 day period following Buyer's execution of this Agreement, as more particularly described in paragraph 8 above, and the one pre-closing inspection) will be permitted. Buyer may not commence any work on the Unit until after closing.

Buyer may examine Seller's Plans and Specifications at Seller's business office, located on site during regular business hours by making an appointment to do so in advance.

9.      Closing Date. Buyer understands that Seller has the right to schedule the exact date, time and place for closing on not less than ten (10) days prior written notice to Buyer. Before Seller may require Buyer to close, however, Seller must receive acceptance of this Agreement and related documents from the Department of Business and Professional Regulation, Division of Florida Condominiums, Timeshares, and Mobile Homes. Seller is hereby authorized by Buyer to postpone the closing for any

{Oak Plantation Condo;4}

Buyer____*NW*____Seller
                INITIALS

reason and Buyer will close on the new date, time and place specified by Seller.

Buyer is aware that this property is part of a resort development and that it may take up to two hundred (200) days to obtain clear title and complete closing. Nevertheless, Buyer and Seller jointly instruct closing agent Mark & Brown, P.A. to proceed with the distribution of funds as set forth in the duly executed HUD-1. In the event that Mark & Brown, P.A. are unable to obtain clear title within two hundred (200) days of disbursement, Buyer is aware that Seller will, at Buyer's written request, reimburse Buyer all funds paid as a result of this transaction as outlined in line 301 of the HUD-1. Buyer and Seller agree to indemnify and hold harmless closing agent Mark & Brown, P.A. from any and all liability.

If Seller agrees in writing to reschedule closing at Buyer's request, or if Buyer is a corporation or other entity and Buyer fails to produce the necessary documentation Seller requests and, as a result, closing is delayed, or if closing is delayed for any other reason (except for a delay desired, requested or caused by Seller), then, whether or not Buyer is actually in default as a result of such delay, Buyer agrees to pay at closing a late funding charge equal to One Hundred Twenty Five and 00/100 Dollars ($125.00) per day, from the date Seller originally scheduled closing to the date of actual closing. All prorations will be made as of the originally scheduled date. **Buyer understands that Seller is not required to reschedule or to permit a delay in closing at Buyer's request.**

10.    Closing. The term "closing" refers to the time when Seller delivers the deed to the Unit to Buyer and ownership changes hands. Buyer's ownership is referred to as "title." Seller promises that the title Buyer will receive at closing will be good, marketable and insurable (subject to the permitted exceptions listed or referred to below). Notwithstanding that Buyer is obligated to pay "all-cash" hereunder, in the event that Buyer obtains a loan for any portion of the Purchase Price, Buyer shall have those rights with respect to closing as are provided by the Real Estate Settlement Procedures Act.

Buyer will receive the following document(s) at closing which Buyer agrees to accept as proof that Buyer's title is as represented above:

(a)    If Buyer elects to use Designated Title Agent (as hereinafter defined), then a written commitment, from a title insurance company licensed in Florida agreeing to issue a policy insuring title or the policy itself. This commitment (or policy) will list any exceptions to title. Permitted exceptions (exceptions which Buyer agrees to take title subject to) are:

(i)    Liability for all taxes or assessments affecting the Unit starting the year Buyer receives title and continuing thereafter;

(ii)    All laws, and all restrictions, covenants, conditions, limitations, agreements, reservations and easements now or hereafter recorded in the public records, which may include, without limitation, zoning restrictions, property use limitations and obligations, easements (rights-of-way) and agreements relating to telephone lines, water and sewer lines and other utilities, provided, however, that none of such matters shall impair the marketability of title;

(iii)    The restrictions, covenants, conditions, easements, terms and other provisions imposed by the documents contained or referred to in the Condominium Documents (and any other documents which Seller, in its sole discretion, believes to be necessary or appropriate) which are recorded, now or at any time after the date of this

{Oak Plantation Condo;4}

Buyer____*NW*____Seller_____
INITIALS

Agreement, in the public records;

(iv) If Buyer is acquiring the Unit subject to the terms of a lease, then title shall be subject to the rights of the tenant thereunder;

(v) Rights of ingress and egress over and across any and all roads and/or sidewalks contained within the Condominium Property;

(vi) The restrictions, covenants, conditions, easements, terms and other provisions imposed by the Existing Encumbrances;

(vii) Pending governmental liens for public purposes as of closing (Seller will be responsible, however, for certified governmental liens as of closing; provided, however, that to the extent that any such certified liens are payable in installments, Seller shall only be responsible for those installments due prior to closing, and Buyer hereby assumes all installments coming due after closing);

(viii) All standard printed exceptions contained in an ALTA Owner's title insurance policy issued in Osceola County, Florida;

(ix) Standard exceptions for waterfront property and artificially filled-in property which once was in navigable waters and all other standard exceptions for similar property; and

(x) Any matters not listed above as long as affirmative title insurance is given for these matters.

Buyer understands that no limitation on Buyer's title prohibits the use of the Unit as a residence, subject to the Condominium Documents.

(b) A Special Warranty Deed. At closing, Seller shall convey to Buyer title to the Unit by special warranty deed. The special warranty deed shall be subject to all of the matters described above and taxes as described below.

At closing, Buyer shall receive a bill of sale for any appliances included in the Unit, Seller's form of owner's ("no lien") affidavit, closing agreement, and FIRPTA (non-foreign) affidavit. At closing, Buyer will sign Seller's closing agreement, settlement statement and all papers that Seller deems reasonably necessary or appropriate for transactions of this nature.

If Seller cannot provide the quality of title described above, Seller will have a reasonable period of time (at least sixty (60) days) to correct any defects in title. If Seller cannot, after making reasonable efforts to do so, correct the title defects (which shall not require the bringing of lawsuits or the payment or satisfaction of involuntary liens or judgments), Buyer will have two options:

(c) Buyer may accept title in the condition Seller offers it (with defects) and pay the full purchase price for the Unit with exceptions for such title matters to be contained in the special warranty deed for the Unit and covenants that Buyer shall not make any claims against Seller because of the defects; or

(d) Buyer may cancel this Agreement and receive a full refund of Buyer's deposits and the parties will relieve each other of all obligations under this Agreement when Seller refunds the

{Oak Plantation Condo;4}

Buyer _____ /VV/ _____ Seller _____
INITIALS

deposits to Buyer.

Buyer agrees to pay the balance of the Purchase Price and any additional amounts owed under this Agreement at closing. Seller has no obligation to accept funds other than as set forth in Section 2 above. Until all sums have been received and cleared, Seller shall be entitled to a vendor's lien on the Unit (which Buyer agrees Seller may unilaterally record in the Public Records of the County). This Section shall survive closing.

11.     Costs and Fees. Buyer understands and agrees that, in addition to the Purchase Price for the Unit, Buyer must pay certain other fees, costs or other sums when the title is delivered to Buyer at closing. These include:

(a)     The costs of officially recording the deed in the Public Records of the County (presently, recording fees are $10.00 for the first page of an instrument and $8.50 for each additional page).

(b)     The documentary stamp taxes payable in connection with the deed conveying the Unit to Buyer (presently, documentary stamp taxes are $.70 for each $100.00 of consideration).

(c)     The premium on the owner's title insurance policy, at the minimum promulgated risk rates promulgated by the Florida Insurance Commissioner (taking into account applicable reissue rates and new home credits, if any).

(d)     A working capital contribution in an amount equal to three times the monthly maintenance charge owed to the Condominium Association, which charge is payable directly to the Association to provide it with initial capital. This contribution will not be credited against regular assessments.

(e)     A reimbursement to Seller for any utility, cable or interactive communication deposits or hook-up fees which Seller may have advanced prior to closing for the Unit. The amount of this charge is now unknown.

(f)     Reimbursement to Seller, and/or Seller's closing agents, for charges incurred in connection with coordinating closing with Buyer and/or Buyer's lender, including, without limitation, charges for messenger expenses, long distance telephone calls, photocopying expenses, telecopying charges, title updates, and others.

(g)     In the event of the imposition of any surcharge or any new governmental tax or charge on deeds or conveyances, Buyer agrees to pay all such increases, surcharges or new taxes or charges.

In addition, if Buyer obtains a loan for any portion of the Purchase Price, Buyer shall pay any loan fees, closing costs, escrows, appraisals, credit fees, lender's title insurance premiums, prepayments and all other expenses charged by any lender giving Buyer a mortgage, if applicable. Notwithstanding any of the references in this paragraph to Buyer obtaining a loan, nothing herein shall be deemed to make this Agreement or the Buyer's obligations under this Agreement, conditional or contingent in any manner on the Buyer obtaining a loan to finance any portion of the Purchase Price and the Buyer shall be obligated to close "all cash".

{Oak Plantation Condo;4}

Buyer____ _N W_____ Seller
INITIALS

In the event that Buyer elects to seek financing for the purchase of the Unit, and Buyer (i) elects to use_____,_____, OR_____(or any other lender designated by Seller, the "Designated Lender"), to finance the purchase, and (ii) allows the title insurance to be provided by Stanton and Gasdick, P.A. (or any other title company designated by Seller, the "Designated Title Agent") and (iii) completes the application for financing and submits same to the Designated Lender within five (5) days following Buyer's execution of this Agreement, and (iv) is approved for a loan within 21 days of the date of this Purchase Agreement and closes on a loan by the Designated Lender, then Seller and/or the Designated Lender has agreed to pay, on behalf of Buyer, the closing expenses for the documentary stamp taxes payable in connection with the deed and the premium on the owner's title insurance policy, at the minimum promulgated risk rates promulgated by the Florida Insurance Commissioner (the "Closing Costs Contribution") required to be paid by Buyer under this Agreement. In such instance, Buyer shall be obligated for payment of any and all other closing costs in excess of the Closing Costs Contribution. Notwithstanding the foregoing, and regardless of whether Buyer elects to utilize the services of the Designated Lender, nothing herein shall be deemed to qualify or otherwise condition Buyer's obligation to close "all cash" on the purchase of the Unit.

Current expenses of the Unit (for example, taxes and governmental assessments, current monthly assessments of the Association, rent and any interim services fee imposed by governmental authority) will be prorated between Buyer and Seller as of the date of closing. Additionally, at closing, Buyer shall be obligated to prepay the next month's maintenance assessment to the Association. If taxes for the year of closing are assessed on the Condominium as a whole, Buyer shall pay Seller, at closing, the Unit's allocable share of those taxes (as estimated by Seller and subject to reproration when the actual tax bill is available) for the Unit from the date of closing through the end of the applicable calendar year of closing. If taxes for the year of closing are assessed on a unit-by-unit basis, Buyer and Seller shall prorate taxes as of the closing date based upon the actual tax bill, if available, or an estimate by Seller, if not available, with Buyer responsible for paying the full amount of the tax bill and Seller reimbursing Buyer for Seller's prorated share of those taxes. Buyer agrees that Seller's prorated share of the taxes due as of closing need not be paid to Buyer; however, until the actual tax bill is presented to Seller, and any proration based on an estimate of the current year's taxes shall be subject to reproration upon request of either party, provided, however, that any request for reproration is made within six (6) months following the issuance of the actual tax bill for the Unit (it being assumed, for purposes hereof, that tax bills are issued on November 1 of each tax year). No request for proration beyond the six (6) month period shall be honored. In addition, Buyer shall pay, or reimburse Seller if then paid, for any interim proprietary and general services fee imposed by any governmental authority having jurisdiction over the Unit. This Subsection shall continue to be effective after closing.

12.     Adjustments with the Association. Buyer understands that Seller may advance money to the Association to permit it to pay for certain of its expenses (for example, insurance premiums). Seller is entitled to be reimbursed by the Association for all of these sums advanced by Seller. The Association will reimburse Seller out of initial contributions and regular assessments paid by Buyer and other owners as those contributions and assessments are collected, or as otherwise requested by Seller. Seller also, at its election, may receive reimbursement for these payments by way of a credit against any sums it may become obligated to pay to the Association. No initial contributions of purchasers to the Condominium Association may be used for such purposes, however, as long as any guaranty by Seller of such Association's assessments is in effect. No funds, including capital contributions or startup funds, receivable from Unit purchasers and payable to the Association or collected by Developer on behalf of the Association shall be used for payment of common expenses prior to the expiration of the period during

{Oak Plantation Condo;4}

Buyer___*NW*___Seller___
                    INITIALS

which the Developer is excused from payment of assessments pursuant to Section 718.116(9)(a), Florida Statutes.

13. Default. If Buyer fails to perform any of Buyer's obligations under this Agreement, Buyer shall be in "default". If Buyer is in default ten (10) days after Buyer receives notice thereof, Seller shall be entitled to the remedies provided herein. However, if Buyer's default is in failing to close on the scheduled date, then Seller can cancel this Agreement without giving Buyer any prior (or subsequent) notification or opportunity to close at a later date.

Upon Buyer's default and the expiration of any notice period, if applicable, all of Buyer's rights under this Agreement will end and Seller may resell the Unit without any accounting to Buyer. Buyer understands that because Seller has taken the Unit off the market for Buyer, has spent money on sales, advertising, promotion and construction and has incurred other costs incident to this sale, Buyer's default will damage Seller. As compensation for this damage, in the event Seller cancels this Agreement because of Buyer's default, Buyer authorizes Seller to keep (or if not then paid by Buyer, Buyer will pay to Seller) all deposits and other pre-closing advance payments (including, without limitation, those on options, extras, upgrades and the like) Buyer has then made (and which would have been required to have been made had Buyer not defaulted) and all interest which was, or would have been, earned on them, all as liquidated damages (and not as a penalty). Any damage or loss that occurs to the Property while Buyer is in default will not affect Seller's right to liquidated damages. Notwithstanding the foregoing, Seller shall not be precluded from seeking to specifically enforce the Agreement.

If Seller defaults under this Agreement, Buyer will give Seller ten (10) days' notice of such default and if Seller has not cured the default within such period, Buyer will have such rights as may be available in equity and/or under applicable law.

The provisions of this Section 13 will continue to be effective after closing.

14. Litigation. In the event of any litigation between the parties under this Agreement, the prevailing party shall be entitled to reasonable attorneys', paralegals and para-professionals fees and court costs at all trial and appellate levels. In addition, in the event of any litigation between the parties under this Purchase Agreement: (i) the parties shall and hereby submit to the jurisdiction of the state and federal courts of the State of Florida, and (ii) venue shall be laid exclusively in Osceola County, Florida. This paragraph shall continue to be effective after any termination of this Agreement, but shall otherwise be deemed merged into the deed at closing.

15. Maintenance Fee. Buyer understands and agrees that the Estimated Operating Budget for the Association (the "Budget") contained in the Condominium Documents provides only an estimate of what it will cost to run the Association during the period of time stated in the Budget. The monthly assessments for the Unit are guaranteed in the manner stated in the Public Offering Statement, at section 6.a. The Budget, however, as opposed to the levels of assessments payable to the Association, is not guaranteed to accurately predict actual expenditures. Changes in the Budget may be made at any time to cover increases or decreases in actual expenses or in estimates. Thereafter, on an annual basis, a majority of the Association's members may vote to continue not to provide any reserves. If an election is in fact made to waive reserves, the assessments per unit payable to the Association will be as set forth in the Estimated Operating Budget as "Assessments per Unit - Without Reserves". If no such election is made, the assessments per Unit payable to the Association will be as set forth in the Estimated Operating Budget as "Assessments per Unit - With Reserves".

{Oak Plantation Condo;4}

Buyer_____ *Nw/* _____Seller_____
INITIALS

16.    Condominium Association. This Agreement is also Buyer's application for membership in the Condominium Association, which membership shall automatically take effect upon closing, at which time Buyer agrees to accept all of the liabilities and obligations of membership.

17.    Seller's Use of the Condominium Property. As long as Seller owns a unit or units and is offering same for sale in the ordinary course of business, it and its agents can keep offices and model apartments within the Condominium Property and/or Association Property. Seller's salespeople can show these units, erect advertising signs and do whatever else is necessary in Seller's opinion to help sell, resell or lease Units or develop and manage the Condominium Property and/or Association Property or to provide management and administration and/or financial services, but Seller's use of the Condominium Property and/or Association Property must be reasonable, in Seller's opinion, and cannot unreasonably interfere, in Seller's opinion, with Buyer's use and enjoyment of the Unit. This paragraph shall continue to be effective after closing.

18.    Sales Commission. Seller will pay all sales commissions due its exclusive listing broker and the co-broker, if any, identified on the first page of this Purchase Agreement (if such space is left blank, it shall mean that Seller has not agreed to pay any co-broker and that Buyer represents that there is no co-broker who can claim by, through or under Buyer), provided that such co-broker has property registered with Seller as a participating co-broker. By signing this Agreement, Buyer is representing and warranting to Seller that Buyer has not consulted or dealt with any broker, salesperson, agent or finder other than Seller's sales personnel (and the co-broker, if any, named on the last page of this Agreement), nor has the sale been procured by any real estate broker, salesperson, agent or finder other than Seller's sales personnel (and the co-broker, if any, named on the last page of this Agreement). Buyer will indemnify and hold Seller harmless for and from any such person or company claiming otherwise. Buyer's indemnity and agreement to hold Seller harmless includes, without limitation, Buyer's obligation to pay or reimburse Seller for all commissions, damages and other sums for which Seller may be held liable and all attorneys' fees and court costs actually incurred by Seller (including those for appeals), regardless of whether a lawsuit(s) is actually brought or whether Seller ultimately wins or loses. This paragraph will continue to be effective after closing.

This Section 18 will survive (continue to be effective after) closing.

19.    Notices. Whenever Buyer is required or desires to give notice to Seller, the notice must be in writing and it must be sent certified mail, postage prepaid, with a return receipt requested to Seller, OP REALTY PARTNERS, LLC, 4100 Enchanted Oaks Circle, Kissimmee, Florida 34741, Attn: David Cooper, or at such other address as Seller may otherwise direct.

Unless this Agreement states other methods of giving notices, whenever Seller is required or desires to give notice to Buyer, the notice must be given either in person, by telephone or in writing and, if in writing, it must be sent either by: (i) certified mail, postage prepaid, with a return receipt requested (unless sent outside of the United States, in which event written notices to Buyer may be sent by regular air mail); (ii) facsimile transmission if Buyer has indicated a telecopy number on Page 1 of this Agreement; or (iii) a recognized overnight courier service to the address for Buyer set forth on Page 1 of this Agreement.

{Oak Plantation Condo;4}

Buyer_____ /VW _____ Seller _____

INITIALS

Buyer's change of address notice is effective when it is received by Seller. All other written notices are effective on the day they are properly delivered or mailed, whether or not received (and all permitted non-written notices to Buyer are effective on the date given by Seller) unless receipt is required specifically in portions of this Agreement.

20.    Transfer or Assignment. Buyer shall not assign this Agreement or its rights hereunder without the prior written consent of Seller, which may be withheld by Seller at its sole discretion. To the extent that Seller consents to any such assignment, said consent may be conditioned in any manner whatsoever. Any such assignee must fully assume all of the obligations of Buyer hereunder by written agreement for Seller's benefit, a counterpart original executed copy of which shall be delivered to Seller. If Buyer is a corporation, partnership, other business entity, trustee or nominee, a transfer of any stock, partnership interest, equity, beneficial or principal interest in Buyer will constitute an assignment of this Agreement requiring consent. Any violation of any of the foregoing provisions of this Section 20 shall be deemed an immediate default by Buyer under this Agreement.

21.    Others Bound by This Agreement. If Buyer dies or in any way loses legal control of his or her affairs, this Agreement will bind his or her heirs and personal representatives. If Seller authorizes Buyer to assign or transfer his interest in this Agreement, this Agreement will bind the assignee or transferee. If Buyer is a corporation or other business entity, this Agreement will bind any successor corporation or entity resulting from operation of law. If more than one person signs this Agreement as Buyer, each will be equally liable, on a joint and several basis, for full performance of all Buyer's duties and obligations under it and Seller can enforce it jointly or severally.

22.    Public Records. Buyer authorizes Seller to record the documents needed to establish and operate the Condominium, as well as all other documents which Seller deems necessary or appropriate, in the Public Records of Osceola County, Florida. Neither this Agreement, nor any notice or memorandum hereof (nor any Lis Pendens), may be recorded by the Buyer.

23.    Buyer's Right to Cancel and Budget.

THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING. FIGURES CONTAINED IN ANY BUDGET DELIVERED TO THE BUYER PREPARED IN ACCORDANCE WITH THE CONDOMINIUM ACT ARE ESTIMATES ONLY AND REPRESENT AN APPROXIMATION OF FUTURE EXPENSES BASED ON FACTS AND CIRCUMSTANCES

{Oak Plantation Condo;4}

Buyer____N.V.____Seller____
INITIALS

EXISTING AT THE TIME OF THE PREPARATION OF THE BUDGET BY THE DEVELOPER. ACTUAL COSTS OF SUCH ITEMS MAY EXCEED THE ESTIMATED COSTS. SUCH CHANGES IN COST DO NOT CONSTITUTE MATERIAL ADVERSE CHANGES IN THE OFFERING.

If Buyer does not cancel this Agreement during this 15-day period, it means that Buyer ratifies this Agreement and the Condominium Documents and Buyer agrees that their provisions are fair and reasonable in Buyer's opinion.

24.    Florida Law; Severability. Any disputes that develop under this Agreement will be settled according to Florida law. If any part of this Agreement violates a provision of applicable law, the applicable law will control; however, the rest of the Agreement will remain in force.

Without limiting the generality of the foregoing, it is Buyer's and Seller's mutual desire and intention that all provisions of this Agreement be given full effect and be enforceable strictly in accordance with their terms. If, however, any part of this Agreement is not enforceable in accordance with its terms or would render other parts of this Agreement or this Agreement, in its entirety, unenforceable, the unenforceable part or parts are to be judicially modified, if at all possible, to come as close as possible to the expressed intent of such part or parts (and still be enforceable without jeopardy to other parts of this Agreement, or this Agreement in its entirety), and then are to be enforced as so modified. If the unenforceable part or parts cannot be so modified, such part or parts will be unenforceable and considered null and void in order that the mutual paramount goal (that this Agreement is to be enforced to the maximum extent possible strictly in accordance with its terms) can be achieved.

25.    Changes. Seller may make changes in the Condominium Documents in its sole discretion by providing Buyer with all such amendments that are made, provided that, as to these changes, Buyer will have fifteen (15) days from the date of receipt of such changes from Seller which materially alter or modify the offering of the Condominium in a manner adverse to Buyer in which to cancel this Agreement (by delivering written notice to Seller of such cancellation) and receive a refund of any deposits with applicable interest. Seller will be relieved of all obligations under this Agreement when Seller refunds the deposits and interest earned, if any. Buyer will not be permitted to prevent Seller from making any change it wishes in its sole discretion, or to pursue any remedy other than the 15-day cancellation remedy described above (and then only for the kind of changes that materially alter or modify the offering in a manner that is adverse to Buyer).

If Buyer has the right to cancel this Agreement by reason of a change which materially alters or modifies the offering of the Condominium in a manner adverse to Buyer, Buyer's failure to request cancellation in writing within the 15-day period will mean that Buyer accepts the change and irrevocably waives his or her right so to cancel. All rights of cancellation will terminate, then absolutely at closing, if not sooner. After closing, Buyer will have no remedy for any changes Seller may make or have made.

The provisions of this Section 25 will continue to be effective after closing.

26.    Time of Essence. The failure of either party to perform all obligations on the precise times stated in this Agreement shall constitute a default hereunder by the defaulting party.

{Oak Plantation Condo;4}

Buyer _____ Seller _____
INITIALS

27.   Disclaimer of Implied Warranties. This Condominium has been in existence since January 21, 1997 and the Units have been previously occupied premises. The Seller disclaims all warranties.

TO THE MAXIMUM EXTENT LAWFUL, ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, ALL WARRANTIES IMPOSED BY STATUTE (EXCEPT ONLY THOSE IMPOSED BY THE FLORIDA CONDOMINIUM ACT TO THE EXTENT THEY CANNOT BE DISCLAIMED AND TO THE EXTENT THEY HAVE NOT EXPIRED BY THEIR TERMS) AND ALL OTHER IMPLIED OR EXPRESS WARRANTIES OF ANY KIND OR CHARACTER WITH RESPECT TO THE UNIT AND/OR THE CONDOMINIUM PROPERTY ARE SPECIFICALLY DISCLAIMED. SELLER HAS NOT GIVEN AND BUYER HAS NOT RELIED ON OR BARGAINED FOR ANY SUCH WARRANTIES.

AS TO ANY IMPLIED WARRANTY THAT CANNOT BE DISCLAIMED ENTIRELY, ALL SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES ARE SPECIFICALLY EXCLUDED AND DISCLAIMED (CLAIMS FOR SUCH SECONDARY, INCIDENTAL AND CONSEQUENTIAL DAMAGES BEING CLEARLY UNAVAILABLE IN THE CASE OF IMPLIED WARRANTIES WHICH ARE DISCLAIMED ENTIRELY ABOVE).

Seller has not given and Buyer has not relied on or bargained for any such warranties. Buyer recognizes and agrees that the Unit and Condominium are not new construction. Buyer, by closing on the purchase of the Unit, shall be deemed to represent and warrant to Seller that in deciding to purchase the Unit, Buyer relied solely on Buyer's independent inspection of the Unit and the Condominium as well as the conversion inspection reports included in the Prospectus. Buyer has not received, nor relied on any warranties and/or representations from Seller of any kind, other than as expressly provided herein.

As to any implied warranty which cannot be disclaimed entirely, all secondary, incidental and consequential damages are specifically excluded and disclaimed (claims for such secondary, incidental and consequential damages being clearly unavailable in the case of implied warranties which are disclaimed entirely above).

Buyer acknowledges and agrees that Seller does not guarantee, warrant or otherwise assure, and expressly disclaims, any right to view and/or natural light.

Further, given the climate and humid conditions in South Florida, molds, mildew, spores, fungi and/or other toxins may exist and/or develop within the Unit and/or Condominium Property. Buyer is hereby advised that certain molds, mildew, spores, fungi and/or other toxins may be, or if allowed to remain for a sufficient period may become, toxic and potentially pose a health risk. By executing and delivering this Agreement and closing, Buyer shall be deemed to have assumed the risks associated with molds, mildew, spores, fungi and/or other toxins and to have released Seller from any and all liability resulting from same, including, without limitation, any liability for incidental or consequential damages (which may result from, without limitation, the inability to possess the Unit, inconvenience, moving costs, hotel costs, storage costs, loss of time, lost wages, lost

{Oak Plantation Condo;4}

Buyer___NW___ Seller___
INITIALS

opportunities and/or personal injury). Without limiting the generality of the foregoing, leaks, wet flooring and moisture will contribute to the growth of mold, mildew, fungus or spores. Buyer understands and agrees that Seller is not responsible, and hereby disclaims any responsibility for any illness or allergic reactions which may be experienced by Buyer, its family members and/or its or their guests, tenants and invitees as a result of mold, mildew, fungus or spores. It is the Buyer's responsibility to keep the Unit clean, dry, well-ventilated and free of contamination.

This Section will continue to be effective after closing.

28.    Representations. Buyer acknowledges warrants, represents and agrees that this Agreement is being entered into by Buyer without reliance upon any representations concerning any potential for future profit, any future appreciation in value, any rental income potential, tax advantages, depreciation or investment potential and without reliance upon any monetary or financial advantage. Buyer acknowledges and agrees that no such representations, including representations as to the ability or willingness of Seller or its affiliates to assist Buyer in renting or selling the Unit, have been made by Seller, or any of its agents, employees or representatives. Buyer further represents and warrants to Seller that Buyer is entering into this Agreement with the full intention of complying with each and every of the obligations hereunder, including, without limitation, the obligation to close on the purchase of the Unit. Neither Seller, nor anyone working by, through or under Seller, has made any statement or suggestion that Buyer would not be obligated to fully comply with the terms of this Agreement and to close on the purchase of the Unit. Further, Buyer understands and agrees that neither Seller, nor any brokerage company, in-house sales personnel and/or other persons working by, through or under Seller, are under any obligation whatsoever to assist Buyer with any resale of the Unit.

This Agreement contains the entire understanding between Buyer and Seller, and Buyer hereby acknowledges that the displays, architectural models, artist renderings and other promotional materials contained in the media, in sales office and model suite are for promotional purposes only. Buyer warrants that Buyer has not relied upon any verbal representations, portrayals or promises other than as expressly contained herein and in the Condominium Documents, including, specifically, but without limitation, any representations as to: (a) potential appreciation in or resale value of the Unit, (b) the existence of any "view" from the Unit or that any existing "view" will not be obstructed in the future, (c) traffic conditions in, near or around the Condominium, (d) disturbance from nearby properties, or (e) disturbance from air or vehicular traffic. The provisions of this paragraph shall survive the closing.

29.    Return of Condominium Documents. If this Agreement is canceled for any reason, Buyer will return to Seller all of the Condominium Documents delivered to him or her in the same condition received, reasonable wear and tear excepted. If Buyer fails to return the Condominium Documents, Buyer agrees to pay Seller $50.00 to defray the costs of preparation, printing and delivery of same.

30.    Survival. Only those provisions and disclaimers in this Agreement which specifically state that they shall have effect after closing will continue to be effective after closing and delivery of the deed. All other provisions shall be deemed merged into the deed.

31.    Disclosures. Under the laws of the State of Florida, Buyer is hereby advised as follows:

(a)    RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are

{Oak Plantation Condo;4}

Buyer ___NW___ Seller ___DL___
INITIALS

exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department. The foregoing notice is provided in order to comply with state law and is for informational purposes only. Seller does not conduct radon testing with respect to the Units or the Condominium, and specifically disclaims any and all representations or warranties as to the absence of radon gas or radon-producing conditions in connection with the Condominium.

(b)   CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT OR CONDOMINIUM. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS AGREEMENT A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.

(c)   BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS REGARDING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(d)   Lead Paint. Pursuant to applicable law, Seller hereby advises Buyer of the following:

"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

Seller has no knowledge of lead based paint or lead based paint hazards in the Unit or the Building. Seller has no reports or records pertaining to lead based paint or lead based paint hazards in the

{Oak Plantation Condo;4}

Buyer___ *NW* ___Seller___
INITIALS

Unit or the Building. Buyer acknowledges having been advised of the foregoing information and acknowledges having received the pamphlet "Protect Your Family from Lead in your Home." Inasmuch as Buyer is provided with a fifteen (15) day rescission period pursuant to the Act, Buyer hereby waives the opportunity to conduct a separate risk assessment or inspection for the presence of lead based paint or lead based paint hazards.

    (e)    THE UNITS IN THE CONDOMINIUM ARE SUBJECT TO TIMESHARE ESTATES.

32.    <u>Miscellaneous</u>. The explanations, definitions, disclaimers and other provisions set forth in the Condominium Documents are incorporated into this Agreement as if repeated at length here. When the words "this Agreement" are used, they shall include in their meaning all modifications, riders and addenda to it signed by Buyer and Seller. Buyer acknowledges that the primary inducement for him or her to purchase under this Agreement is the Unit itself and not the recreational amenities and other Common Elements. Seller's waiver of any of its rights or remedies (which can only occur if Seller waives any right or remedy in writing) will not waive any other of Seller's rights or remedies or prevent Seller from later enforcing all of Seller's rights and remedies under other circumstances.

33.    <u>Entire Agreement</u>. This Agreement is the entire contract for sale and purchase of the Unit and once it is signed, it can be amended only by a written instrument signed by both Buyer and Seller which specifically states that it is amending this Agreement. Notwithstanding the foregoing, nothing herein shall excuse the Developer from any liability under, or compliance with, the provisions of Section 718.506, Florida Statutes.

BUYER(S)

Print Name:_____

Print Name: _Ning Wei_

Date of Execution: _June 27, 2016_

SELLER

OP REALTY PARTNERS, LLC, a Florida limited liability company

By: _____

Name: _DAVID Cooper_

Title: _____

Date of Execution: _6/30/16_

{Oak Plantation Condo;4}

Buyer ___NW___ Seller ___DC___
INITIALS

# Exhibit B

LEASE AGREEMENT – UNIT:  ( o 5

THIS LEASE AGREEMENT ("LEASE") was entered into on the 2 7 ᵗʰ day of ___June___ 2016, between __Ning  wei__ ("LANDLORD") and OP Condominium Mgt, LLC, a Florida limited liability company ("TENANT").

IN CONSIDERATION of the following covenants, the LANDLORD leases to TENANT the following described property ("PROPERTY"):

Real Estate:    Unit: ( o 5  .

Located at:  c/o 4090 Enchanted Oaks Circle, Kissimmee, Fl 34741

under the following terms and conditions:

1. **Term of Lease**. This lease shall commence on the first day of the month following the date and time that Landlord acquires title to the PROPERTY ("Commencement Date") and terminate four years and one day after the Commencement Date ("Termination Date").  LANDLORD may terminate this lease at any time without cause by giving TENANT 90 (ninety) days notice in writing of termination.

2. **Rent**. Rent shall be due and payable, plus all applicable sales or use taxes, if any, as follows:

(a)     $ 490 .00 (NET) per month due on the first day of each month commencing on the first Commencement Date.

(b)     TENANT shall pay the first month's rent on the Commencement Date.

(c)     TENANT shall pay the Rent to be received by the 30th day of the month (for a domestic LANDLORD).

(d)     TENANT shall remit the rent, by money order, cashier's check or check drawn on a local bank.

(e)     All rent shall be paid without set off or deduction except that TENANT may deduct amounts due by LANDLORD to Oak Plantation Condominium Association, Inc. and/or to OP Realty Partners, LLC prorated for partial months and/or any deductions required by the Internal Revenue Service ("IRS").

3. **Quiet Enjoyment**. TENANT shall have the peaceful and quiet enjoyment of the PROPERTY as long as TENANT complies with the provisions herein.

4. **Acceptance of Premises**. TENANT has inspected and examined the PROPERTY and the premises and utility installations and the same are in good and satisfactory condition and TENANT leases the premises in "as is" condition.

5. **Utilities/Maintenance**. LANDLORD shall be responsible for all utilities including electricity, water and sewer, and all maintenance of the PROPERTY.  TENANT further agrees to compensate LANDLORD for all utilities by paying directly to Oak Plantation Condominium Association, Inc. the portion of the monthly condominium and association assessments allocated to Utilities ("Utilities Fees"). TENANT shall promptly correct all plumbing and electrical problems, keep the fixtures, air conditioner and heater in good working order, keep the interior and exterior of the premises neat, clean and water-tight and otherwise maintain the PROPERTY in its current condition, ordinary wear and tear excepted. LANDLORD'S sole obligation shall be to maintain the roof.

6. **Taxes/Insurance**. LANDLORD shall be responsible for all condominium and association assessments (excepting Utilities Fees as set out in 5 above), real estate and tangible personal property taxes. TENANT shall be responsible for tenant's hazard insurance premiums (policy to be secured by TENANT).

7.   Use. The premises shall be used by the TENANT solely for residential purposes and at all times in strict compliance with all applicable ordinances, covenants, and restrictions encumbering the Property.

8. Assignment and Subletting. TENANT may assign, lease or sublet the premises without the prior written consent of LANDLORD. LANDLORD may assign this agreement without the prior written consent of TENANT.

9.   Liability. TENANT agrees to hold LANDLORD harmless from any damages to any person(s) or property occurring on the premises during the lease term, except to the extent that same shall be due to LANDLORD's negligence or breach of this Agreement.  LANDLORD and TENANT, for themselves and their respective insurance companies, waive any rights each may make against the other on account of loss or damage occasioned to either arising from any risk generally covered by fire and extended coverage insurance.

10.   Fire and Casualty. LANDLORD will promptly repair and restore the premises if damaged by fire or other casualty, and the rent will equitably abate until such time as repair and restoration is completed.  If the cost of repair and restoration amounts to more than one-half of the replacement value of the building, or, if such repair or restoration cannot reasonably be completed within 180 days of such casualty, then either party shall have the option of canceling this Lease, exercisable by delivering written notice thereof to the other party.

11.   Surrender of Premises. TENANT covenants and agrees that upon expiration of the term of this Lease, or any renewals thereof, or upon termination of this Lease for cause, TENANT will peacefully surrender the Premises together with all improvements thereon to the LANDLORD.  In the event that TENANT holds over for any reason and does not vacate the Premises when so required, the LANDLORD shall recover double rent as authorized by Chapter 83, Florida Statutes and is authorized to deduct from TENANT'S deposit such rent for the period of time during which the resident refuses to surrender possession.  So long as TENANT remains in possession, all other terms and conditions, to the extent of applicable, shall continue to apply.

12.   Subordination and Non-Disturbance Clause. This Lease shall be subordinate to the lien of any mortgage; however, TENANT'S right of possession shall not be disturbed as long as it does not default in performance of the terms of this Lease.

13.   Default. Time is of the essence of this Agreement.  If TENANT defaults in any provision of this Lease and such default shall continue uncured for a period of 15 days thereafter (or if TENANT fails to pay the rent within the time allowed after receipt of a statutory notice to pay), then LANDLORD may (1) resume possession of the premises and recover immediately the difference between the rent specified in this Lease and the fair rental value of the premises for the remainder of the term, reduced to a present worth; (2) resume possession of the premises and rerent the PROPERTY for the account of the TENANT and recover from TENANT any damages; or (3) pursue any other remedy allowed by law.  All proceeds which are not paid when due shall accrue interest at the highest lawful rate.

14.   Further Assurances. The parties will execute such additional documents as may be reasonably required to confirm and fulfill the intent of this Agreement.

15.   Attorney's Fees. If legal proceedings are instituted the prevailing party shall be entitled to an award for all reasonable attorney's fees.

16.   Miscellaneous.

(a)     TENANT shall not make any alterations or changes to the premises without the prior written consent of the LANDLORD.

(b)     LANDLORD shall provide TENANT a valid IRS Form W-9 and, in the case of a non-Domestic Landlord, apply for a US Tax Identification Number from the IRS.

(c)     Venue for any legal action shall be in Osceola County, Florida, and THE PARTIES WAIVE THE RIGHT TO A TRAIL BY JURY.

(d)      All notices shall be hand delivered to the party, or delivered by a nationally recognized courier service or certified mail, return receipt requested to at the following addresses:

TENANT:
OP Condominium Mgt, LLC
4090 Enchanted Oaks Circle, Kissimmee, Fl 34741

LANDLORD:
~~T4-1-3304  Raycom Skyline, Jiefang South Road,~~
~~Jiang An District, Wuhan, Hubei, China.~~

(e)      Time is of the essence of this Agreement.

(f)      Upon request from the LANDLORD the TENANT shall provide written verification of the terms of this Lease and the then current status of the Lease.

(g)      This document has been prepared by a joint effort of the parties and shall not be construed against any party.

17. _Radon Gas_. Notice to Prospective Purchaser/Tenant: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed Federal and State guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. Pursuant to Section 404.056(8), Florida Statutes.

18. **Entire Agreement**. This is the entire Agreement of the parties. There are no representations or understandings relied upon except those contained herein. Any modification must be in writing and signed by both parties.

19. **Offer to Lease**. This Lease shall become binding only if signed by both parties.

WITNESS
Print Name: ZHANG RAN

LANDLORD
Print Name: Ning Wei

WITNESS
Print Name:

DATED: June 27, 2016

WITNESS
Print Name:

TENANT
Print Name: David Costin (for Chan)

WITNESS
Print Name:

DATED: 6/30/16

<u>LEASE REMITTANCE INSTRUCTIONS – UNIT NO:</u> 105

Landlord Name: _Ning Wei_          DATE: _2016 . 6 . 27_

Landlord Address: _____

_____

OP Condominium Mgt, LLC (TENANT) should send the net lease to (complete as appropriate):

(1) Address Above;

(2) Mailing Address: _____

_____

(3) Bank.
   Account Name: _WEI   NING_

   Account Number: _84204023_      Routing Number: _111000614_

   Bank Name: _JPMorgan Chase Bank, N.A._

   Bank Address: _PO Box 659754 ,_

   _San Antonio, TX 78265-9754_

LANDLORD confirms they have a US ITIN or have applied for a US ITIN.
Please confirm:
   (A) IRS Form W-9 Attached (if US Resident);
   (B) IRS Form W-8ECI Attached (if none US Resident); or
   (C) US ITIN Applied for.

(No TENANT will withhold US Taxes if a US ITIN is not obtained).

_____
LANDLORD
Print Name: _Ning Wei_

## LEASE AGREEMENT – REFURBISHMENT ADDENDUM – Unit ( 05 .

THIS ADDENDUM ("LEASE ADDENDUM") is to a LEASE AGREEMENT ("LEASE") entered into on the day of __27th June__, 2016, between __Ning Wei__ ("LANDLORD") and OP Condominium Mgt, LLC, a Florida limited liability company ("TENANT").

The LEASE shall be amended as follows:

1. **Definitions**. All defined terms in the LEASE shall be incorporated in this LEASE ADDENDUM.

2. **Terms and Obligations**. All terms and obligations set forth in the LEASE shall remain in force except where altered in this LEASE ADDENDUM.

3. **Refurbishment of Property**. TENANT agrees to a one time refurbishment of the unit to a standard comparable with other refurbishment Unit 808 at OP during the 4 year Lease Period. Timing of the Refurbishment works is at the sole discretion of the Tenant.

4. **Further Assurances**. The parties will execute such additional documents as may be reasonably required to confirm and fulfill the intent of this Agreement.

5. **Entire Agreement**. This is the entire Agreement of the parties in relation to this LEASE ADDENDUM. There are no representations or understandings relied upon except those contained herein. Any modification must be in writing and signed by both parties.


WITNESS
Print Name: JUANG NAN

LANDLORD
Print Name: Ning Wei

WITNESS
Print Name: _____

TENANT
Print Name: DAVID Cohen (for cpmg

LEASE AGREEMENT – ADDENDUM – Unit. /0 S

THIS ADDENDUM ("LEASE ADDENDUM") is to a LEASE AGREEMENT
("LEASE")
entered into on the  27th day of , June, between ___Ning Wei___
("LANDLORD") and OP Condominium Mgt, LLC, a Florida limited liability
company ("TENANT").

The LEASE shall be amended as follows:
1. **Definitions**. All defined terms in the LEASE shall be incorporated in this LEASE
ADDENDUM.

2. **Terms and Obligations**. All terms and obligations set forth in the LEASE shall
remain in force except where altered in this LEASE ADDENDUM.

3. **Use of Property**. LANDLORD may temporarily withdraw the PROPERTY from
the LEASE agreement for private usage under the following terms and conditions:

   (a) LANDLORD shall give TENANT at least ninety (90) days notice of their
   intention to use the PROPERTY outside of the LEASE (the "USAGE
   NOTICE");
   (b) LANDLORD shall specify in the USAGE NOTICE the term of private usage
   ("USAGE PERIOD");
   (c) The USAGE PERIOD shall be for maximum of seven (7) consecutive days
   only in a twelve (12) month period;
   (d) During such USAGE PERIODS, the TENANT shall be directly responsible to
   pay (pro-rata) all condominium and association assessments, including, but
   not limited to, the Utilities Fees. •
   (e) If the LANDLORD elects the USAGE PERIOD to be a total of days less than
   seven (7) consecutive days in a 12 month period then that will be total sum
   allowable in that 12 month period.

4. **Liability**. During USAGE PERIODS, LANDLORD agrees to hold TENANT
harmless from any damages to any person(s) or property occurring on the premises
during the lease term, except to the extent that same shall be due to TENANT''s
negligence or breach of this Agreement. LANDLORD and TENANT, for themselves
and their respective insurance companies, waive any rights each may make against the
other on account of loss or damage occasioned to either arising from any risk
generally covered by fire and extended coverage insurance.

5 **Further Assurances**. The parties will execute such additional documents as may be
reasonably required to confirm and fulfill the intent of this Agreement.

6. **Entire Agreement**. This is the entire Agreement of the parties in relation to this
LEASE ADDENDUM. There are no representations or understandings relied upon
except those contained herein. Any modification must be in writing and signed
by both parties.

WITNESS LANDLORD

Print Name: ZHANG PAN     Print Name: _Ning Wei_

WITNESS TENANT

Print Name: DAVID WURM     Print Name: _____!

(FOR UPWM)

LEASE AGREEMENT – QUARTERLY WIRE ADDENDUM – Unit _105_ .

THIS ADDENDUM ("LEASE ADDENDUM") is to a LEASE AGREEMENT ("LEASE") entered into on the _27th_ day of _June_ , 2016 between _Ning Wei_ ("LANDLORD") and OP Condominium Mgt, LLC, a Florida limited liability company ("TENANT").
The LEASE shall be amended as follows:

1. **Definitions.** All defined terms in the LEASE shall be incorporated in this LEASE ADDENDUM.

2. **Terms and Obligations.** All terms and obligations set forth in the LEASE shall remain in force except where altered in this LEASE ADDENDUM.

3. **Payment of Rent.** LANDLORD elects to have the net rent due under the lease paid quarterly in arrears as follows:

(a)    Clause 2 (c) shall be amended as follows:

TENANT shall pay the net Rent quarterly to be received by the 30th day of the month following the quarter end.

(b)    Clause 2 (d) shall be amended as follows:

TENANT shall remit the rent, by money order, cashier's check or check drawn on a local bank or by wire (at TENANTS cost) to LANDLORD bank as follows:

Account Name: _WEI NING_  Account Number: _842040123_

Bank Name: _JPMorgan Chase Bank, N.A._ Bank Address: _PO Box 659754_

US Bank Account
Bank Routing Number: _111000614_          _San Antonio, TX 78265-9754_

INTERNATIONAL BANKING

IBAN Number: _____    OR    SWIFT CODE: _____

4. **Further Assurances.** The parties will execute such additional documents as may be reasonably required to confirm and fulfill the intent of this Agreement.

5. **Entire Agreement.** This is the entire Agreement of the parties in relation to this LEASE ADDENDUM. There are no representations or understandings relied upon except those contained herein. Any modification must be in writing and signed by both parties.

Dated: _June 27, 2016_

_____
WITNESS
Print Name: _ZHONG RAN_

_____
WITNESS
Print Name: _____

_____
LANDLORD
Print Name: _Ning Wei_

_____
TENANT
Print Name: _DAVID Cobbs (for OP on)_

EXHIBIT "A"
Special Stipulations

The following Special Stipulations, if conflicting with any other provision of the Agreement, shall control:

1. Seller's obligation to enter into the Lease Agreement is subject to Purchaser's acquisition of the Property in accordance with the terms and conditions of the Agreement.

2. Purchaser's obligation to purchase the Property is subject to the execution and delivery at closing of a Lease Agreement between Purchaser, as landlord and OP Condominium Mgt, LLC, as Tenant on terms and conditions as set forth in said lease. Seller will provide a 6% net rental proceeds for 48 months for Purchaser.
The Seller will pay real estate taxes and Oak Plantation Condominium Association monthly assessment and the net rental proceeds of
$ _____480_____ per month.

3.The Lease will be renewed annually after the rental garantee period of 48 months, with net annual rent of no less than 6% of the pruchase price.

Date: _June 27, 2016_

Purchaser Signature:_____

Date: _6/2016_

Seller Signature:_____ (For cfsm)

# EXHIBIT C



5728 Major Blvd
Suite 502
Orlando, FL 32819
(407) 932-3933

April 27, 2018

Dear Owner:

Oak Plantation Resort (hereinafter "OP") has requested that I write this letter to you regarding matters related to the long-term rental management of your condominium unit.

In March of 2017, OP entered into a franchise agreement with Magnuson Hotels, a worldwide hotel chain. Magnuson represented that based on their extensive market research, OP would experience increased revenue resulting from higher Average Daily Rate, and an increase of revenue of slightly more that $2 million. This would have resulted in a conservative estimate of $4.2 million in room revenue in the first year.

After almost a year of severe disappointments with Magnuson, on January 19, 2018, Oak Plantation cancelled its contract with Magnuson. Magnuson ultimately admitted that their projections were based on flawed data. OP believes that Magnuson either intentionally or negligently mislead OP in order to induce OP to join their organization. As a result, OP has filed suit in Osceola County against Magnuson in order to recover monies paid to Magnuson and, if appropriate, to collect lost revenues.

The experience with Magnuson has resulted in OP having reduced cash flow. This problem has been compounded by the need to renovate suites and common areas of the resort which were damaged during last year's hurricanes. The two hurricanes that affected the Central Florida region resulted in downed electronics and computer systems, lost reservations, and a significant loss of income during what is normally the resort's peak tourist season. This resulted in an unavoidable shortfall in revenue and a reduction in budgeted reserves.

With the removal of Magnuson, OP has again become an independent operator and reservation efforts, room rates and occupancy are improving, as is guest satisfaction. Clearly the Oak Plantation Resort remains a significant and well-respected asset to the Orlando and Kissimmee hotel suite rental community.

However, as part of its return to independent operation, OP anticipates that during the next three (3) to four (4) months, it will experience substantially greater advertising, marketing and booking expenses which will contribute to its current cash shortfall.

OP believes that it will resolve its dispute with Magnuson and show an increase in both

bookings and higher room rates. However, over the next three to four months, it will be required to place a moratorium on net lease rentals payments until Oaks busy season resumes.

Oak will continue to pay the fees due to the Homeowners Association on your behalf during this period and will pay interest at the rate of five percent (5%) per annum on deferred amounts.

Any Real Estate Taxes due will also be paid once Oaks cashflow resumes. In the meantime, please be assured any unpaid Taxes at this time do not have any significant cause for concern.

We thank you for your attention, cooperation and patience during this period of adjustment.

Please feel free to contact the undersigned at bmark@marklawfirm.com if you should have any questions regarding this letter.

Sincerely Yours,

Brian M. Mark, Esquire,
as General Counsel for Oak Plantation Resort, OP Condominium Mgt, LLC

bmm/sma

cc: Oak Plantation Management